## SCHLAFLY v. D'ARCY.

(Circuit Court of Appeals. Eighth Circuit. September 8, 1924.)

No. 6618.

**Landlord and tenant ⬅148(2) — Contract of lease held to require lessee to pay federal taxes assessed against lessor as part of rent.**

A contract between two corporations, by which one sold all its personal property and leased its real estate to the other, construed and *held* to require the lessee to pay federal taxes subsequently assessed against the lessor as a part of the agreed rent.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

In the Matter of the Best-Clymer Manufacturing Company, bankrupt; W. C. D'Arcy, trustee. John F. Schlafly, trustee in bankruptcy of the Temtor Corn & Fruit Products Company, appeals from an order of the District Court disallowing a claim. Affirmed.

See, also, In re Temtor Corn & Fruit Products Co., 299 Fed. 326.

Ralph T. Finley and Frank H. Sullivan, both of St. Louis, Mo. (Jones, Hocker, Sullivan & Angert, of St. Louis, Mo., on the brief), for appellant.

James Campbell and Albert D. Nortoni, both of St. Louis, Mo. (Carter, Nortoni & Jones, of St. Louis, Mo., on the brief), for appellee.

Before STONE and KENYON, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge. This is a proceeding in bankruptcy in which the appellant is appealing from an order and decree of the United States District Court for the Eastern District of Missouri, approving and sustaining an order of the referee in bankruptcy, which disallowed a portion of a claim of the appellant as trustee of one bankrupt estate against another bankrupt estate of which the appellee is the trustee. The controversy is determinable out of the interpretation of a contract and lease between the two bankrupt companies, made and entered into before either was in bankruptcy. The substantive facts, so far as they may be necessary for a determination of the questions here raised, appear to be as follows:

Prior to June 30, 1920, the two companies were operating independently, but with the same executive officers. On that date they entered into an agreement by which the Best-Clymer Company agreed to sell to the Temtor Company its personal

property for a consideration of approximately $1,500,000, the larger portion of which was to be paid by the assumption of the obligations of the Best-Clymer Company and the balance in accordance with a resolution of the board of directors of the latter company, which resolution provided that this balance should be credited to the Best-Clymer Company upon the books of the Temtor Company, and should be payable at the expiration of 20 years, with interest, except such advancements as should be required, particularly for the completion of additions then being made to the real estate of the Best-Clymer Company in St. Louis. On the same date the two companies entered into a lease agreement, by which the Best-Clymer Company leased to the Temtor Company all its real estate for a period of 20 years for a consideration which was to be equivalent to 7 per cent. upon the investment values, plus a net reserve to be set aside for depreciation, obsolescence, or replacements, as well as all other charges which might accrue against the Best-Clymer Company in the interim, all of which agreed minimum rental was to be sufficient to enable the Best-Clymer Company to pay a quarterly dividend upon its outstanding preferred stock. In addition to this there was to be paid under said lease the sum of $25,000 per year, which was to be used as a sinking fund for the purpose of permitting the Best-Clymer Company to retire its outstanding preferred capital stock. Two of the items set forth in the resolution of the board of the Best-Clymer Company as the basis of the agreement, and listed among the liabilities of the Best-Clymer Company, were reservation for the payment of federal taxes, one of a general item of about $41,000, and the other a special item of $50,000 for the year 1920.

The arrangement between the two companies under the agreement and lease continued until March, 1921, when a subsequent agreement was made by which the companies virtually re-exchanged the properties. Subsequent to the execution of the agreement and lease of June, 1920, the parties proceeded to carry out their terms. Some time in July, 1920, after the Temtor Company had taken possession of the property, the government made a demand for federal taxes then ascertained to be due from the Best-Clymer Company for the year 1917. That company took the matter up with the Temtor Company, and the taxes in the amount of $37,641.93 were paid to the government by the Temtor Company, and,

when the remittance was sent in, it was accompanied by a protest on the part of the Best-Clymer Company. This item was not charged to the Best-Clymer Company, but carried by the Temtor Company among its bills receivable, and was so found upon the books when the bankruptcy of the two companies ensued.

Subsequently the trustee of the Temtor Company presented its claim to the trustee of the Best-Clymer Company in the matter of adjusting the accounts between the two companies, which claim included the item of taxes for the year 1917 paid by the Temtor Company, and upon the hearing before the referee upon the claim this item was disallowed, the order of the referee so disallowing the item approved by the court, and from that order and decree the trustee of the Temtor Company appeals.

The only legal question for determination here is as to whether or not the decision of the trial court was correct in disallowing the item for taxes hereinbefore referred to, which requires a consideration of certain portions of the agreement, resolution, and lease, to which reference has heretofore been made. Clause 3 of the lease reads as follows:

"3. The lessee covenants to pay the following rental for said premises and plants during the term of the lease, to wit:

"(a) An amount equivalent to seven per cent (7%) per annum upon the investment of the lessor in said properties and plants, including such additions as may hereafter be added to the said property, improvements, machinery or equipment, but after first deducting from such investment proper deductions for depreciation, obsolescence, and replacements.

"(b) Also a sum equivalent to the net reserve which should hereafter be set aside for depreciation, obsolescence, or replacements, after deducting therefrom such amounts as the lessee may have paid for necessary replacements or additions.

"The rental as hereinbefore provided shall be computed at the end of each year, and shall be paid annually on the 30th day of June of each year, or on such other date as may be agreed upon between the parties; but the lessee shall advance and pay to the lessor on account of such rental quarterly, on the last days of September, December, March, and June of each year, in cash, such amount as may be necessary to enable the lessor, the Best-Clymer Manufacturing Company, to pay the quarterly dividend then accruing on its outstanding seven per

cent. (7%) preferred stock (which now aggregates $850,000 outstanding), together with such additional sum as may be necessary to pay the said lessor's expenses of all kinds, including also corporation, franchise, and other taxes, and any and all charges which may hereafter accrue against said company, to the end that said lessor may at all times out of the said rental have enough net return to enable it to pay the quarterly dividend accruing on its then outstanding stock.

"(c) If the rental be paid by the lessee, to be computed at the end of each year, be less than the amount necessary to pay a seven per cent. (7%) annual dividend on the then outstanding preferred stock of the said Best-Clymer Manufacturing Company, payable in quarterly installments on the last days of September, December, March, and June of each year, then the lessee shall nevertheless pay as a minimum rental for such year the amount necessary to enable the lessor to pay such dividends accruing on said preferred stock, plus all expense of the lessor as aforesaid; also, as part of the minimum rental, the further sum of twenty-five thousand dollars ($25,000) annually to enable the lessor, Best-Clymer Manufacturing Company, to purchase and retire outstanding preferred stock to the extent of two hundred and fifty (250) shares at par each year. Said twenty-five thousand dollars ($25,000) so paid each year shall be used by the lessor only for the purpose of purchasing and retiring such preferred stock. * * * "

Clause 5 of the lease reads as follows:

"5. It is further agreed that the lessee shall finish and complete the buildings and additions to plants (including machinery and equipment), now being erected at the Virginia avenue and Davis street plant in the city of St. Louis, Mo., and the lessee shall keep the property of the lessor free from any liens for such improvements or for any additions which the lessee may hereafter make, but the cost thereof shall be regarded as having been advanced by the lessee for the account of the lessor, and shall be credited against any indebtedness which may then be owing by the lessee to the lessor, whether evidenced by notes or open account; but no authority is given to make any advances for the account of the lessor in excess of indebtedness then owing by the lessee to the lessor, except as the same may be credited against rentals owing hereunder as hereinbefore provided, but no deductions from rentals shall be made in any year

which will reduce the cash payments to the lessor for such year to an amount less than the sum required by the lessor to pay the lessor's expenses, accruing dividends on outstanding preferred stock, and sinking fund for the retirement of preferred stock as hereinbefore provided."

And clause 8 of the lease reads as follows:

"8. The lessee also agrees to pay all taxes, general and special, which may be assessed against the leased property or any part thereof, or which may become payable during the term of the lease."

Upon a consideration of these clauses, the referee made his finding that the claim for taxes paid by the Temtor Company should be disallowed, and we feel that this interpretation, in view of the circumstances, is correct. A fair interpretation of the meaning of these clauses seems to lead to the conclusion that it was the intention of the parties that all expenses, including taxes of every nature, should be taken care of by the Temtor Company as a part of the rental basis, so as to leave the Best-Clymer Company with funds sufficient to pay the quarterly interest on its preferred stock and establish a yearly sinking fund for the retirement of that preferred stock. The lease provided for the payment by the Temtor Company of all expenses and franchise and other taxes which might accrue against the Best-Clymer Company. The taxes in question were ascertained, assessed, and were therefore payable after the lease went into effect.

The appellant strenuously argues that the word "advance" as found in subdivision (b) of clause 3 of the lease should be interpreted to mean that such an item should be merely an advancement on behalf of the Temtor Company for the Best-Clymer Company, and chargeable against the latter company, and under certain circumstances this would undoubtedly be a logical conclusion. In the case at bar, however, this theory does not seem to be acceptable.

First, it is not consistent with the concluding clause of subdivision (b) of clause 3, which reads, "To the end that said lessor may, at all times out of the said rental, have enough net return to enable it to pay the quarterly dividend accruing on its then outstanding preferred stock," for by this clause the parties seem to express their conclusion that the rental shall include all necessary expenses of the Best-Clymer Company; second, by clause 5 it appears that the parties have indicated what was charge-

able against the indebtedness owing by the Temtor Company to the Best-Clymer Company, which would seem to exclude an item of the character in controversy here; third, clause 8 reiterates the payment of all taxes by the Temtor Company "which may become payable during the term of the lease"; fourth, the general situation develops that all of the property of the Best-Clymer Company was in the control and possession of the Temtor Company, leaving the former company with no funds or assets out of which to make payments of any kind or character; and, fifth, the Temtor Company when presented with the claim paid it, and did not presume to charge it upon its books against the Best-Clymer Company, suggesting that the officers of the Temtor Company did not at the time consider the item chargeable against the Best-Clymer account.

All of these conditions tend to nullify the theory of the appellant that the taxes in question, not being within the contemplation of the parties at the time, were not therefore a part of appellant's obligation, and the cases cited so holding are not based upon facts analogous to this case. The various articles of agreement between the parties are long and complicated, and therefore difficult of interpretation. While the theory of the appellant is plausible, the entire transaction between the parties, as evidenced by the contract, the resolution, and the lease, seem to justify the interpretation given them by the referee and the trial court, and to reveal less inconsistency than would the adoption of the theory contended for by the appellant.

For the reasons stated, the decision of the trial court will be and is affirmed.